Good morning ladies and gentlemen. Our first case for this morning will be Burton v. Ghosh. Mr. Stone. Thank you Chief Judge Wood. May it please the court, Brandon Stone on behalf of the plaintiff, Alnoraindus Burton. In this case, the question for the court to decide is whether a plaintiff's filing of an amended complaint that adds only minor factual details to a pre-existing cause of action permits a defendant to raise any and all affirmative defenses, even those defenses that were waived or forfeited. This question is particularly important here because here the district court permitted the defendants to raise an affirmative defense for the first time five plus years into the litigation because of the simple fact that Mr. Burton filed an amended complaint. So explain, I mean I'm sure you're prepared to do this, but explain for us why this is materially different from what happened in the Massey case because there, up until the second complaint, it was an exhaustion defense, hadn't been raised. It was raised in the third and fourth amended complaints. It seems similar. Well, Your Honor, in the Massey case there were a couple differences there. So the first is that in the later amended complaints that you just referenced, the third and fourth amended complaint, the original plaintiff added a new plaintiff. So they joined a new plaintiff, a prison doctor who had been fired from the VOP. But why did that have anything to do with the exhaustion defense that was later raised? The doctor had his own issues about whether he could go forward in this case, but was he pertinent to the actual defense that was raised? So, Your Honor, the way I read Massey is that for the defendants, this changed the entire complexion of the case. So you've got new causes of action, a new plaintiff, and so what the court ruled was that it was proper for the defendant to be able to reopen the defenses to the complaint. And so, Your Honor, it's materially different from this case, Your Honor. And the Massey court even noted that it would be unfair, actually, it says, to hold to the contrary would, in essence, enable plaintiffs to change their theory of the case while simultaneously locking the defendants into their original pleading. So Massey does not hold that whenever the procedural fact that a plaintiff filed an amended complaint, that suddenly all defenses are back on the table. That's inconsistent with the holding of Massey, and I should add that it is in direct conflict with other circuits and other district courts who have interpreted Massey on this exact question, Your Honor. So it's pretty apparent to distinguish Massey on its facts. Would you agree, Mr. Stone, that in Massey there were factors that basically could go either way, that a district judge could exercise discretion there to allow the addition of the exhaustion defense, or might have taken the approach that, well, the addition of the doctor doesn't seem to affect exhaustion so much, so maybe I'd go the other way on that and deny that. I understood the problem in this case to be that the district judge seemed to think she had no discretion at all, that even a correction of a typographical error in an amended complaint would open everything up using the broader dictum from earlier in the Massey opinion. That's exactly right, Judge Hamilton. So what Judge Wood did here below in the district court was see that an amended complaint had been filed, didn't even look at the amended complaint, and said that this line of dicta in Massey permits the defendants to raise any and all affirmative defenses, even if they've been waived or forfeited. And so to your point, the rule that we've advocated for here is it's to guide the judge's discretion. So it's to say, I'm going to look at this complaint, I'm going to look at the substance of the amendments, and I'm going to ask whether it changes the scope or theory of this case. Are you arguing, in essence, for a kind of Rule 15 amendment standard, kind of interests of justice? It is what amounts to a Rule 15 standard, Your Honor. It is. When justice does require, and such as when the scope or theory of the case changes, it's only proper to allow the defendants to raise those previously waived or forfeited affirmative defenses. But where a complaint does not do that, as was here, it is improper to reopen all of those defenses as if they never, or as if the case had just begun. Mr. Stone, one of the, say, not necessarily the most central dispute in this case, but there is this factual dispute, the evidence that you submitted with your Rule 59 motion and so on, about what happened early on in this second case. I had a couple of questions early on there. First, do you know why this second case did not go to Judge Gettleman? I do not, Your Honor. It went to Judge Lefkow, and then it was later when Judge Wood took the bench, it was reassigned to her. And so I don't have an answer to that question, although I would say that, you know, on the merits, this is why the doctrines of waiver and forfeiture exist. It's very difficult to go back five-plus years and argue about what Judge Gettleman meant and whether he would have— Well, on a related note there, I've been worrying about the question of prejudice for both sides in this case, and I would have thought that if res judicata had been raised immediately upon the filing of the second case, there still would have been time to go back to Judge Gettleman under Rule 60B and ask for a modified judgment, right? Absolutely, Your Honor. At this point, way too late, right? Yes, Your Honor. And that is on a forfeiture point, we should add. That's the reason that it's very difficult. I find it a little bit ironic that here, by my calculation, the complaint had been filed 37 days late under Judge Gettleman's order, but yet here we are five-plus years later today, seven-plus years later, trying to figure out whether or not— I would have been more than happy to walk in in 2012 into Judge Gettleman's courtroom and say, Your Honor, I understand his pro bono counsel was late filing this, but can we proceed with this case? And I should add that the defendants were not prejudiced there, whereas Mr. Burton here is prejudiced by the long delay in asserting this affirmative defense. Mr. Stone, one thing that in similarly exploring the background of the prior lawsuit as Judge Hamilton's raising, one thing that I noted is when the second case was filed and then rolled out to Judge Lefkoe, in the civil cover sheet that accompanied the complaint, you know what I'm talking about? Yes, Your Honor. The check-the-box document? Yes, Your Honor. At the bottom of that document, the box is checked that this case is not a refiling of a previously dismissed action, and then it's signed by the then-counsel, Mr. Grenard. Is there any doubt that's a false statement? Not to my knowledge, Your Honor. And that might explain why in the rollout of the case it didn't go back to Judge Gettleman, might it not? It may, Your Honor. I'm not familiar with the procedural rules with regards to checking that box, but it may, Your Honor. Well, if the box would have been checked that it is a refiling, the form asks you to list the case number, and then you have to list the judge that previously dismissed the action. That may be true, Your Honor, on the point of whether or not it went back to Judge Gettleman. I would like to raise, Your Honor, that we've also argued and supplied an affidavit on waiver, Your Honor. So our position is that the defendants were aware of this previously filed action that they'd represented to past counsel that they were not going to raise this issue because they didn't want to be the defendants who walked in and said, oh, it was a little bit late, which would prejudice the plaintiff to no fault at all. Yeah, I don't know how clear all that is from the record. My only point is that it looks like when this was filed, there was what seems to me, you know, an effort to kind of disguise or hide the prior case from the district court. And it just seems like that should be a fact that's thrown into the hopper on however this comes out. I understood, Your Honor, and I don't – I can't go back and – No, no, you didn't file the form. Yes, Your Honor. I know that. So there is, you know, just to throw in a few more complications, we've been critical of prisoners who file these giant rambling complaints asserting all sorts of claims against one and all. And in a sense, this is – that's what this was. You know, there were aspects of it that belonged in the Central District, aspects of it that belonged in the Northern District. And so it is conceivable to me that maybe it was thought of as a new and focused case, not the same old defective case that was there before. And I'm going to actually raise this with your opponents too. I think what we are partly seeing in this case, which relates back to something Judge Hamilton has also said, is this unfortunate tendency of the district courts not to pay any attention to the federal rules of civil procedure. Rule 8C sets forth affirmative defenses. Affirmative defenses belong in an answer. And Rule 7 describes what's a pleading and what's a motion. A 12B6 thing is not a pleading. It's a motion. And if you put the affirmative defenses forward in the proper form, everybody is alerted to the fact that it's on the table, the kind of orderly procedure that we've been talking about that didn't happen here, one thinks might have happened. And so this, oh, we can tell, you know, let's just do this on 12B6, just isn't what the rules call for anywhere. Absolutely, Your Honor. And we did argue that we were prejudiced by the fact that the defendants filed a Rule 12B6 motion and raised this defense for the first time in that motion. I mean, it happens with statutes of limitations occasionally. It happens with preclusion. It's not too common with the other 8C defenses. And it's fine when it's on the face of the complaint, Your Honor. But that wasn't the case here. And so I see that I've passed my 10 minutes. I'd like to reserve. If you'd like to reserve the rest of your time. Can I just ask quickly, what is the claim against Wexford here? Well, the claim against Wexford, we don't have a Monell claim against Wexford, Your Honor. It is, I'd have to go look back at the complaint. But Dr. Ghosh was employed by Wexford. They were added as a defendant on the deliberate indifference claim, Your Honor. Well, that would have to be a Monell claim since there's no respondeat superior. Unless you want us to change the law, which some of us would like to, but that's an old story, okay? Your Honor, I'd have to go look back at the complaint. Maybe you could tell us who the model is. Why don't you answer your question? I will do that, Your Honor. Okay. All right. Thank you. Mr. Holting. Good morning, Your Honor. May it please the court, counsel? This court should affirm the district court's dismissal, finding that Mr. Burton's 2012 lawsuit was barred by the doctrine of res judicata. So I have some problems with this, and it's not just my 8C problem, but I do have an 8C problem because I think if this had been teed up properly, it may have been understood as something within the court's discretion. Am I correct that Dr. Ghosh was never served in the first case? Precisely, Your Honor, and that's why counsel was not aware of the res judicata. Well, but it also has implications for claim preclusion because if you look, just for example, at Wright and Miller on claim preclusion, it's different from issue preclusion. Issue preclusion at this point has a pretty well-established non-mutual dimension so that somebody who is not a party to the prior litigation can raise issue preclusion either defensively under Blond or Tongue or offensively under Parklane-Hosiery. But claim preclusion, as Wright and Miller confirm, is not an area in which non-mutuality has come up. So I would turn then to Taylor v. Sturgill, which says, it starts, the opening sentence of the opinion is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he has not been made a party by service of process. So in other words, Dr. Gosch never having been made a party by service of process in the first case could not be bound by anything that happened in the first case. And so if there's, if the mutuality rule still exists, then he can't take advantage of it either. Understood, Your Honor. And as a preface to the response, that argument was never raised by counsel in the district court. The district court had no opportunity. I'm aware of that. So we'd argue that that argument has been raised. Waiver issues are things you may not want to emphasize. Understood. And you see, this is, you see, my point is, if this had been brought up properly as a Rule 8c affirmative defense, I think somebody would have had the opportunity to look into the elements of claim preclusion under the federal common law of judgments. Is it correct, if I could interrupt? Go ahead. That the district judge gave the plaintiff seven days to respond to your motion to dismiss? I'm not, I don't have the. That's the way I read it. That's the way I read it, yeah. A very brief time, basically. Understood. It still was, the 8c requires, you know, the purpose of 8c in terms of affirmative defenses, such as registry decata, is to allow the party to have a chance to respond. They were given a chance to respond. They were, they did file their response. They later filed the Rule 59e motion. As the district court noted in ruling on the 59e motion, if the plaintiff had requested leave to file a surreply to address additional issues. That was a really interesting point. Yes, it was. Let me quote from a couple of our earlier decisions. Okay. There is no requirement that a party file a surreply to address an argument believed to be improperly addressed, and a party need not seek leave to file a surreply to preserve an argument for purposes of appeal. Should a party be required to seek leave to file a surreply in order to preserve an argument for purposes of an appeal, arguments before the district court would proceed ad infinitum, making litigation unruly and cumbersome. I don't think we've ever held against a party its failure to try to file a surreply brief. In case you're interested, those are some quotations from a case called Smith v. Bray, quoting other cases 681F3rd at page 903. But I really didn't understand that because you kind of delivered the real meat of your argument in the reply brief on this amendment issue. And our black letter law is that that's too late. Yes, Your Honor. However, because the law was already established through Massey, there was no reason for . . . No, that's not the rule. You don't make – you don't save obvious arguments for the reply brief and innovative ones for your opening brief. In response to – so in the district court's order following the amended complaint, the district court granted defendants leave to answer or otherwise plead. At that point . . . And 12B6 is not a pleading. Honestly, I mean the district – there's another case we have today too that has the same problem. The rules set forth the way you raise certain defenses, and defenses roughly in confession and avoidance, the affirmative defenses, need to be raised in an answer which you did not file. And then if you want to file an answer with your affirmative defenses, you're entirely free and welcome to use Rule 12C. You don't have to go through the whole discovery process. You can file a 12C motion for judgment on the pleadings, at which point the district court will have the opportunity to see, are there disputed issues of fact? Is there something that needs to be looked at? They've proffered this affidavit from prior counsel. Maybe as Judge Scudder is raising, there might have been other things that somebody might have wanted to look at with prior counsel. The process just didn't work properly. A couple points on that. With the 12C distinction versus filing the answer, with the affidavit, because of Massey's holding, there was no additional discovery. Massey's what? The holding. Do you want to address the language in the opinion that says, to hold to the contrary would, in essence, enable plaintiffs to change their theory of the case while simultaneously locking defendants into their original pleading? That's the rationale, not the broader language earlier in the opinion. I think that language, emphasizing that language misstates the broad holding of Massey. And would create a conflict with other circuits, correct? I was a little troubled that your brief did not address the Krensk and Rowley decisions from the 11th and 4th circuits, which seem to have taken quite a different approach to the scope of an amended complaint and what it opens up for a defendant to do. Understood, Your Honor. I would say, in Massey, as Judge Wood pointed out, the factual and procedural background is precisely the same as what happened here. But Judge Hamilton has pointed to the critical difference, which is that it was understood to be, as a lot of Rule 15 amendments are, it was understood to be within the discretion of the district court. Here, if the district court had realized she had discretion, she might have said, this is five years in. No one has uttered a peep about this before. There have been ample opportunities. It's just too late in the day. District judges decline amended pleadings all the time on that kind of basis. And she didn't know. And counsel raises that argument in his reply brief, which we argue is waived, but regardless of that, without getting too much into waiver, the judge's decision was based on the filing of an amended complaint. The case law cited by plaintiffs. So is it your position that if an amended complaint, let's say, corrects the spelling of the defendant's name five years into the case, that that opens everything up automatically? I think that would be a different question. What's different about it? Why is it different? Or you substitute the real identity of parties for John Doe parties. Things like that happen all the time to clean up a pleading on the eve of trial or something. Yes. And I would say that under Massey, that would open the door to a defendant to raise new and previous. So correcting the typo, you read Massey as saying, if you correct the typo, sky's the limit for the defense. Unwaived defenses. I think practically speaking, if there was a typo, there would be an, the order wouldn't be to file an amended complaint and give a party answer to leave or leave to answer. Go with my hypothetical. I can tell you about examples where it's happened. Okay. In a case where there's a typo, I think the holding of Massey as it's written states that that would open the door. Let's suppose Mr. Holting, that there is discretion on whether to relieve the defense of the, of the waiver that clearly occurred here. What reasons would you offer in the district court for a favorable exercise of discretion five years into the case? In this case, I would say as. Based on the amendment. Yes. As your Honor pointed out, the complaint that was filed stated that there was, this was not a refile. There was no opportunity and this could go into a notice argument. But doesn't the record show that there was at least a year or so that the defense was on notice that these were related cases? No, your Honor. This in speaking with the handling attorney, this isn't in the record because it didn't come up. Essentially what happened was when council filed the motion or asked for leave to file the amended complaint, the handling attorney took a look at the initial complaint and just based on his experience, thought it was curious that a prisoner 1983 case was, the initial complaint was filed, not pro se, but by a council from mayor Brown. At that point, he took it upon himself to go look through Pacer to see if he could find something. So he never bothers to look through Pacer before. There was no reason for him to look through Pacer. He had no, there was nothing to clue him in to the, to the need to look through Pacer. It was through his experience where he noted, he thought it was curious that mayor Brown had filed the opening. I know. I remember that part of this, but when you say opening complaint, you mean the one before judge Gettleman in the 2012. Got it. All right. So there was no notice of the 2011 for 43. The first complaint, the very, the very first one. Yeah. 11, four. Yeah. One, one three. Oh, in the 12, eight, four, three, the first complaint was filed by council from mayor Brown. In the initial, the 2011, it was filed by Mr. Burton as a pro se plaintiff. Um, and then he was later appointed council prior to the rule 41, a two dismissal where judge Gettleman, his order was explicit. He warned council, um, you need to file a motion to reinstate within 90 days. There's an issue with a 60 verse 90, but that's irrelevant because it took him 136 days to file. But, but here we have, I'm just looking at your brief, October, 19, 2012 Burton through Mr. Granard files, the 1983 complaint against Goshen Wexford. That's the eight, four, four, three case that we're looking at. Yes. All right. It's filed through council. And then we have, um, years going by years go by years. Go by. And finally, January 17, 2018 council for Burton makes a motion leave to file the amended complaint. That's what triggers what we're here for. But if you're going to rely on the fact that it just dawned on the defense that this was a counseled complaint that was brand new notice of that exists, October, 19, 2012, I would say, uh, in response to that one, uh, in setting rules moving forward, the experience of council to know that a prisoner complaint, uh, typically is not filed by council from mayor Brown. The opening complaint, um, basing that off the experience would be something that's beyond, you know, would require much more of the courts to determine. It sounds like an equitable argument in answer to judge Hamilton's question about what would you be talking to the district court about if this case were understood differently? Yes. Uh, precisely. Can I ask you about the issue of privity and Wexford? Sure. Um, is Dr. Gosh at relevant times here, an employee or an independent contractor? Um, that's not present in the record. I believe my understanding of how, uh, Wexford operates is that he's an employee, but I, I can't many, many of the doctors who work for Wexford are independent contractors, correct? I believe so. We see them a lot. I know. And I've already, we mentioned, um, now I've argued that issue before. So I'm somewhat familiar with it. And in most cases, most civil cases we would take for granted. There's privity between an employee and an employer with respect to liability. But how does that apply? And is there guidance in the case law? Um, where respond to yet superior liability is not available as it is not under current law under section 1983. I'm sorry. Could you say that again? Well, I think what judge Campbell is getting at, you're not, since there's no respond to its superior liability, then why would there be privity? I'll put it around the other way. And if there's no privity, then you run into my problem with the way this right. As this court held in Harrison, be dear employers are in privity with their employees for res judicata purpose. Was that in section 1983 claim? Uh, no, I don't believe that's the whole problem. Yeah. There's a special rule. Understood. You guys want. Oh, yes. No, you don't want to give this rule up for this case. And I would say in the alternative and crucially whether or not there's privity, what, because it's a, first off 1983, there's no res responding at superior, but because if res judicata is found on behalf of dr. Gosh, there's no underlying constitutional violation. Oh, if you get that far, we can follow your thinking, but that's not where we were jumping in because of dr. Gosh. Um, if, if dr. Gosh is absence from the first case as an unserved person, therefore not in the case pursuant to Taylor matters, then you have a different issue. I see that my time's up. Uh, there's a number of other issues. Uh, if you'd like, I could address them or, um, I see no questions from my colleagues. So we will rely on your brief for, uh, for those reasons. We ask that this court from dismissal in favor of defendants. All right. Thank you very much. Anything further, Mr. Stone. Thank you. Chief judge would, uh, I just wanted to, uh, answer judge Hamilton's question. Uh, we are asserting one L claim, uh, in the, in the, yes, yes, we, we understand that yours. Yes. Uh, and, and, uh, as, as a final point, um, regarding notice, uh, it, it's worth pointing out that the attorney, the defense attorney who filed the rule 12B6 motion was not the attorney that had been on the case for years prior. And so, uh, Mr. Halliday was the one that, uh, had represented that they were not going to, uh, raise this res judicata defense. Um, and so, when counsel, counsel, I, I don't think intentionally left that out, but it's, it's worth noting that it's a different attorney. Um, and so, for the reasons, uh, we discussed earlier, uh, we ask that the court reverse the district court, find that defendants have ways, waived their res judicata defense, and remand this case to the district court. You're ready for trial, basically, right? Uh, summary judgment or trial, Your Honor. Oh, sorry. Okay. All right. Thank you very much. Thanks to both counsel. Thank you. We will take the case under advisement.